UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JO IDA P.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

CASE NO. C19-684-BAT

**ORDER REVERSING THE COMMISSIONER AND REMANDING**

Plaintiff seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. She contends the ALJ erroneously assessed certain medical opinions and her residual functional capacity ("RFC"). Dkt. 10 at 1. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is currently 51 years old, has an associate's degree, and has worked as a typist, marketing coordinator, and category assistant. Tr. 38, 186-92. In January 2013, she applied for benefits, alleging disability as of December 29, 2010. Tr. 130-41. Her applications were denied initially and on reconsideration. Tr. 76-78, 80-81. The ALJ conducted a hearing on September 24, 2014 (Tr. 33-54), and subsequently found Plaintff not disabled. Tr. 16-27.

ORDER REVERSING THE COMMISSIONER AND REMANDING - 1

The Appeals Council denied Plaintiff's request for review (Tr. 1-6), and Plaintiff sought judicial review of the Commissioner's decision. The U.S. District Court for the Western District of Washington reversed the ALJ's decision and remanded for further administrative proceedings. Tr. 1121-35. A different ALJ held a hearing on August 9, 2018 (Tr. 1064-1110), and subsequently found Plaintiff not disabled. Tr. 1032-53. Plaintiff now seeks judicial review of that decision.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff had not engaged in substantial gainful activity since December 29, 2010, the alleged onset date.

**Step two:** Plaintiff's diabetes mellitus, asthma, hypertension, obesity, sleep apnea, carpal tunnel syndrome, anxiety disorder, post-traumatic stress disorder, and depression are severe impairments.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2]

**RFC:** Plaintiff can perform light work, with additional limitations: she is limited to performing unskilled, repetitive, routine tasks in two-hour increments. She can frequently handle and finger. She can have no contact with the public. She is capable of working in proximity to, but not in coordination with, co-workers. She can have occasional contact with supervisors. She can occasionally stoop, squat, crouch, crawl, kneel, and climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She will be off task at work seven percent of the time, but can still meet minimum production requirements. She will be absent from work ten times per year. She must work in an environment free from smoke, chemicals, temperature extremes, and high humidity.

**Step four:** Plaintiff cannot perform her past work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, she is not disabled.

Tr. 1032-53.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

**DISCUSSION**

**A.     Medical opinions**

Plaintiff challenges the ALJ's assessment of several medical opinions, each of which the Court addresses in turn.

**1.     Suzanna Parle, M.D.[3]**

Dr. Parle completed a DSHS form assessment in December 2016, describing Plaintiff as limited to sedentary work. Tr. 1330-32. In October 2017, Dr. Parle completed another form assesement describing many physical limitations, but also concluded Plaintiff's mental limitations were the primary reason why she is unable to work. Tr. 1618-21. The ALJ gave little weight to both of these opinions.

Regarding the 2016 opinion, the ALJ did not realize it was written by Dr. Parle, a treating doctor, and instead misread the handwriting and believed it was written by a "Dr. Park." Tr. 1050. The 2016 opinion repeatedly refers to "attached" documents that are not attached to the opinion, but, as noted by Plaintiff, are presumably the treatment notes from the date of the opinion. Dkt. 10 at 11 (citing Tr. 1521-25). The ALJ faulted the 2016 opinion as failing to contain any explanation and referring to nonexistent attachments, but because the ALJ did not realize the opinion was written by a treating physician named Dr. Parle, he did not consider Dr. Parle's treatment notes in connection with the 2016 opinion.

Furthermore, the ALJ stated Dr. Parle's 2016 opinion that Plaintiff was limited to sedentary work was an opinion on an issue reserved to the Commissioner (Tr. 1050), but this is incorrect. *See* 20 C.F.R. § 416.927. Dr. Parle did not, for example, opine that Plaintiff was disabled or unable to work, which are issues reserved to the Commissioner; instead, she

---

[3] Some of the records refer to Dr. Parle as Suzanna Parle Pachera.

ORDER REVERSING THE COMMISSIONER AND REMANDING - 3

indicated that despite Plaintiff's conditions Plaintiff had the capacity to perform sedentary work, which is a proper subject for a medical source statement. *See* Social Security Ruling 96-5p, 1996 WL 374183 (Jul. 2, 1996).

Because the ALJ's assessment of Dr. Parle's 2016 opinion is based upon his misapprehension of Dr. Parle's identity and contains erroneous reasoning regarding issues reserved to the Commissioner, the Court directs the ALJ on remand to reconsider Dr. Parle's 2016 opinion in conjunction with Dr. Parle's treatment notes, particularly the contemporaneous treatment notes dated December 1, 2016.[4]

As to Dr. Parle's 2017 opinion, the ALJ found Dr. Parle's findings regarding the limitations caused by Plaintiff's leg cramps and carpal tunnel syndrome to be inconsistent with the record, and the ALJ also found various parts (including a reference to a need to avoid "excessive stress") of Dr. Parle's description of Plaintiff's limitations to be vague and undefined. Tr. 1050-51. The ALJ also found the lifting restrictions indicated by Dr. Parle to be inconsistent with the findings of full strength and normal motor/sensory examinations. *Id*.

Plaintiff contends if the ALJ found Dr. Parle's opinion to be vague, he should have recontacted her to seek explanation. Dkt. 10 at 12-13. She has not cited any authority requiring the ALJ to recontact Dr. Parle under these circumstances, however: the ALJ may properly

---

[4] Although Plaintiff requests a remand for a finding of disability, the Court finds that this remedy is inappropriate particularly in light of the ALJ's unchallenged findings with regard to Plaintiff's testimony as well as the indication in the record that Plaintiff began more regular mental health treatment in the year prior to the most recent administrative hearing. *See* Tr. 1045-46 (ALJ's discussion of Plaintiff's "sporadic and delayed engagement in counseling"). Further development of the record would allow the ALJ to consider whether Plaintiff's mental health conditions were amenable to more regular treatment and whether, in turn, that treatment led to an improvement of Plaintiff's physical conditions. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014). Accordingly, the Court declines to find that a remand for a finding of disability is the appropriate remedy under these circumstances.

consider the extent to which Dr. Parle provided an explantation in support of the opinion is determining the weight the opinion should be given. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). Although the ALJ erred in indicating the ability to withstand workplace stress is not a proper vocational limitation (Tr. 1050), the ALJ reasonably construed Dr. Parle's reference that Plaintiff needs to avoid "excessive stress" as a not setting forth a specific worl limitation because it fails to identify any particular component of work that causes Plaintiff excessive stress or provide any other definition of "excessive stress." Tr. 1618.

Furthermore, although Plaintiff correctly notes she was diagnosed with carpal tunnel syndrome (Dkt. 10 at 12 (citing Tr. 1599)), this diagnosis alone does not establish that she was limited to lifting no more than five pounds as Dr. Parle found, particularly because Plaintiff's strength was found to be intact despite her carpal tunnel syndrome, as the ALJ stated. *See* Tr. 1600. The ALJ also mentioned the lack of clinical findings to support the physical restrictions mentioned in Dr. Parle's opinion: Plaintiff visited Dr. Parle twice during the month in which Dr. Parle wrote her opinion, and during neither appointment did Plaintiff complain of carpal tunnel problems or demonstrate any loss of strength. Tr. 1641-52. Plaintiff did complain of leg cramps (Tr. 1651), but again, the ALJ discounted Plaintiff's self-reporting and Plaintiff has not challenged those findings. Accordingly, the ALJ did not err in finding that Dr. Parle's 2017 opinion was unsupported by clinical findings and unexplained, or in discounting the opinion on that basis.

**2.     Jessica Barnett, M.D.**

Plaintiff's primary care physician, Dr. Barnett, completed a DSHS form assessment describing Plaintiff's physical symptoms and limitations in December 2014, and concluded

Plaintiff was "severely limited" and unable to perform sedentary work. Tr. 1326-28. As with Dr. Parle, the ALJ found Dr. Barnett's conclusion that Plaintiff was unable to perform sedentary work was an opinion on an issue reserved to the Commissioner. Tr. 1050. The ALJ erred. Again, the Court finds Dr. Barnett's opinion is a proper subject for a medical source statement, and does not constitute an opinion on an issue reserved to the Commissioner.

The ALJ also noted Dr. Barnett found for Plaintiff, it was "[h]ard to work in high-stress jobs right now." Tr. 1327. The ALJ found this limitation to be inadequately defined. Tr. 1050. Although it is true, as Plaintiff notes, that an ALJ properly considers a claimant's ability to withstand workplace stress in assessing her RFC (Dkt. 10 at 10-11), the Court finds the ALJ reasonable found Dr. Barnett's opinion regarding Plaintiff's ability to handle "high-stress" jobs is vague and does not set a specific work limtiation. Also the ALJ did not err in discounting this part of Dr. Barnett's opinion due to lack of adequate explanation, as Dr. Barnett did not explicitly tie this "examination finding" to any of the workplace limitations she described, and thus it is not clear to what extent, if any, Dr. Barnett accounted for this stress limitation in assessing Plaintiff's ability to work.

The ALJ walso emphasized Dr. Barnett cited Plaintiff's neck pain as a basis for limiting her to sedentary work. Dkt. 1050 (referencing Tr. 1326). At step two the ALJ found "neck pain" is not a medically determinable impairment, Tr. 1035, and that neck pain is not a clinical diagnosis; the ALJ noted that Dr. Barnett noted Plaintiff still needed further x-ray testing which the ALJ interpreted as undermining Dr. Barnett's opinion regarding the impact of Plaintif's neck pain. Tr. 1050. The ALJ failed to recongize Dr. Barnett listed neck pain as one of Plaintiff's complaints, and did not list it as a diagnosis or imply that it caused workplace limitations. Tr. 1326-27. Thus, this is not a legitimate basis for discounting Dr. Barnett's conclusions.

Because the ALJ's assessment of Dr. Barnett's opinion contains several errors, the ALJ is directed to reconsider Dr. Barnett's opinion on remand.

**3.　　State agency opinion**

Plaintiff contends the ALJ erred in assigning the most weight to the opinion of Guillermo Rubio, M.D., the State agency consultant who opined as to Plaintiff's physical limitations (Tr. 70-72), because Dr. Rubio's opinion was written in 2013, before much of the evidence in the record was generated. Dkt. 10 at 13. The ALJ noted Dr. Rubio's opinion was "consistent with medical records as they existed up to that time." Tr. 1046. The ALJ's assessment fails to explicitly address whether the State agency opinion is consistent with the multitude of records that post-date the State agency review, and this lack of acknowledgement suggests a failure to comply with the regulations, which require an ALJ to "evaluate the degree to which [nonexamining source] medical opinions consider all of the pertinent evidence in your claim[.]" 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). On remand, the ALJ shall reconsider the Dr. Rubio's opinion in light of the entire record, rather than only the evidence Dr. Rubio considered in 2013.

**4.　　Angela Tobias, M.D.**

Dr. Tobias, Plaintiff's treating physician, provided several opinions regarding Plaintiff's physical limitations and ability to work in 2013 and 2014. Tr. 1022-28. In form opinions written in 2013 and 2014, Dr. Tobias opined Plaintiff is "severely limited," in that she was unable to perform sedentary work due to her impairments. *Id*. The ALJ found these opinions were unexplained, unsupported, and inconsistent with the record, even when Dr. Tobias's underlying clinical records were read in conjunction with the opinions, because Dr. Tobias's clinical notes did not describe disabling limitations caused by Plaintiff's physical limitations. Tr. 1047-48.

Plaintiff contends the ALJ overlooked many notes indicating Plaintiff's unresolved anxiety caused many of her physical conditions (which were controllable and nondisabling on their own) to become uncontrolled. Dkt. 10 at 4-5. The ALJ found Plaintiff's gap in psychiatric treatment undermined Dr. Tobias's opinion regarding the impact of Plaintiff's mental conditions, however. Tr. 1047-48. Plaintiff contends she did, in fact, receive some mental health treatment from her primary care providers and from a psychologist, even though she did not receive regular treatment from a mental health specialist until years later. Dkt. 10 at 7-8. The ALJ explained in an earlier part of the decision Plaintiff's sporadic mental health treatment, with only occasional use of medication, undermined her allegations of disabling mental health limitations (Tr. 1044-46), and Plaintiff has not challenged this line of reasoning or any of the ALJ's other reasons for discounting Plaintiff's subjective testimony. As that portion of the ALJ's decision augments his assessment of Dr. Tobias's opinions describing disability based primarily on the impact of Plaintiff's mental health conditions, the Court finds that the ALJ adequately explained why he found Dr. Tobias's conclusions to be inconsistent with the record. This is a legitimate reason to discount Dr. Tobias's opinions.

### 5. David Widlan, Ph.D.

Dr. Widlan examined Plaintiff in January 2015 and completed a DSHS form assessment describing her symptoms and limitations. Tr. 1753-62. Dr. Widlan rated Plaintiff's limitations as marked in two areas: adapting to workplace changes, and communicating/performing effectively in a work setting. Tr. 1755. He also indicated Plaintiff had severe limitations in her ability to complete a normal workday/workweek. *Id*. Otherwise, Dr. Widlan rated Plaintiff's limitations as moderate or none/mild. *Id*.

The ALJ noted Dr. Widlan's mental status examination was "mostly within normal limits[,]" which undermined the marked and severe limitations Dr. Widlan found. Tr. 1051. Plaintiff argues Dr. Widlan considered other factors beyond the mental status examination, such as the symptom inventories and testing attached to the form opinion. Dkt. 10 at 14. Although Plaintiff reported many depression and anxiety symptoms to Dr. Widlan (Tr. 1760-62), the ALJ discounted Plaintiff's self-report and Plaintiff does not challenge that finding. Therefore, Plaintiff's reference to her self-reporting as support for Dr. Widlan's opinion is unavailing. Furthermore, Dr. Widlan noted that the trailmaking tests he performed showed Plaintiff was not impaired. Tr. 1757-59. Accordingly, Plaintiff has not shown that the ALJ erred in assessing Dr. Widlan's opinion as inconsistent with the mental status examination, or in discounting it on that basis.

### 6. Shawn Kenderdine, Ph.D.

Dr. Kenderdine examined Plaintiff in 2013 and 2016, completing DSHS form assessments both times. Tr. 1698-1702, 1333-38. As to the 2016 opinion, the ALJ noted Dr. Kenderdine opined Plaintiff was markedly limited in her ability to perform detailed tasks, and the ALJ found this to be unsupported by Dr. Kenderdine's examination. Tr. 1047.

Plaintiff states she challenges the ALJ's assessment of Dr. Kenderdine's 2016 opinion, but then goes on to dispute the ALJ's reasoning with regard to the 2013 opinion. Dkt. 10 at 14-15. The Court assumes Plaintiff intended to challenge the ALJ's assessment of Dr. Kenderdine's 2013 opinion, because Plaintiff has not provided any reason why the ALJ's reasoning with regard to the 2016 opinion was inadequate.

Turning to consider the 2013 opinion, the Court finds the ALJ's assessment of the 2013 opinion was also sufficient. The ALJ noted Dr. Kenderdine acknowledged that Plaintiff's

symptom amplification hampered his ability to rate the severity of Plaintiff's anxiety, and yet Dr. Kenderdine did not explain how he accounted for symptom magnification when assessing Plaintiff's workplace limitations. Tr. 1046-47. The ALJ also noted Dr. Kenderdine found none of Plaintiff's workplace limitations were more severe than "moderate," and these ratings were not "unreasonably high," but Dr. Kenderdine nonetheless did not explain how he reached his conclusions. Tr. 1046.

Plaintiff argues the ALJ's assessment is internally inconsistent, because if Dr. Kenderdine's ratings were not unreasonably high, "then it is unclear how they are not supported by the results of Dr. Kenderdine's evaluation." Dkt. 10 at 15. The ALJ did not find they were unsupported, however: he found that they were unexplained. Plaintiff has not cited any portion of Dr. Kenderdine's opinion that contradicts the ALJ's finding. Furthermore, Plaintiff has not shown the ALJ erred in finding that Dr. Kenderdine's opinion was undermined by Plaintiff's symptom amplification, particularly because Dr. Kenderdine did not explain how he factored that amplification into his severity ratings. *See, e.g.*, *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (affirming an ALJ's determination that when a claimant exaggerates symptoms, that exaggeration invalidates test results).

In any event, Plaintiff has not shown how the moderate limitations described by Dr. Kenderdine are necessarily inconsistent with the ALJ's RFC assessment, and thus any error in the ALJ's assessment of Dr. Kenderdine's opinion would be harmless.

**B.    RFC**

Plaintiff argues the ALJ erred in assessing her RFC, insofar as the ALJ based portions of the RFC assessment on the vocational expert's testimony, rather than evidence in the record. Dkt. 12 at 5. Because the Court has found error in the ALJ's assessment of the medical evidence

that requires remand, and the ALJ may reconsider Plaintiff's RFC assessment on remand, the Court need not address at this time whether the ALJ's RFC assessment contains error as formulated in the current decision.

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ shall reconsider Dr. Parle's 2016 opinion, Dr. Barnett's opinion, and Dr. Rubio's opinion; develop the record and reassess Plaintiff's RFC as needed and proceed to the remaining steps of the disability evaluation process as appropriate.

DATED this 20th day of November, 2019.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge